In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Sammie Stroman, #242033, ) | Civil Action No.  9:06-2055-PMD-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Richard Bearden, Donna Smalley, ) | |
| Tim Riley, Barney Loyd, J. C. Counts, and ) | |
| Jane Doe, a/k/a Ms. Regina, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.  INTRODUCTION

The Plaintiff, Sammie Stroman ("Plaintiff" or "Stroman"), an inmate of the South Carolina Department of Corrections ("SCDC"), was housed in the Tyger River Correctional Institution ("Tyger River CI") and later in the Lee Correctional Institution ("Lee CI") during the time of the events giving rise to this action.  The Plaintiff seeks relief pursuant to 42 U.S.C. § 1983[1] based upon allegations of deliberate indifference to his serious medical needs.  He has filed this action against the Defendants Richard Bearden, a medical doctor at Tyger River CI ("Dr. Bearden"), Donna Smalley, a Nurse at Tyger River CI ("Nurse Smalley"), Tim Riley, Warden of Tyger River CI ("Warden Riley"), Barney Lloyd, Associate Warden of Tyger River CI ("Associate Warden Lloyd"),[2] J. C. Counts, Associate Warden of Tyger River CI ("Associate

---

[1]     42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[2]     Associate Warden Lloyd's name was mis-spelled by the Plaintiff.  The court will use the correct spelling of that defendant's name in this Report.

Warden Counts"), and Jane Doe, a/k/a Ms. Regina, an X-Ray Technician at Kirkland Correctional Institution Infirmary ("Ms. Regina").  Each Defendant is sued individually.[3]

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C.

## II.   *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him

---

[3]     *See* Complaint [1] at pp. 3-4.

(*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  BACKGROUND TO THE CASE

The Plaintiff claims he was denied adequate medical care as guaranteed by the Eighth Amendment, and seeks compensatory and punitive damages against each of the Defendants. [1] Specifically, the Plaintiff contends that in December 2004 or January 2005, while housed at Tyger River CI, he "began experiencing intense pain in the area of his stomach."[4] The Plaintiff submitted a sick call request, was seen by a nurse, and Dr. Bearden ordered a blood test and a urinalysis. Plaintiff alleges the blood test was "negative," but the urinalysis "came back abno[r]mal."[5] The Plaintiff states he was told by a nurse that he had a sexually transmitted disease called Trichomoniasis, and Dr. Bearden ordered "antibiotics to cure the disease." Plaintiff contends that after the "expiration" of the antibiotics, the pain in his stomach continued so he submitted another sick call request and again saw Dr. Bearden,[6] who examined his abdomen and found it normal. Plaintiff's pain continued, and spread to the area of his testicles, and he again asked to see Dr. Bearden, who ordered and upper and lower GI, and a kidney x-ray. Plaintiff admits that all test results came back normal, yet his pain continued to expand to his left hip area. Plaintiff again saw Dr. Bearden, who allegedly told him that because the test results

---

[4]  *See* Complaint at p. 4.

[5]  *See* Complaint at p. 4.

[6]  *See* Complaint at p. 4.

were normal, there was nothing more to offer regarding his pain, and "instructed him to get out of his office."[7] Plaintiff informed Dr. Bearden that because of the pain, he was suffering from depression, and could not eat properly or sleep because of his discomfort. Plaintiff's pain continued, and he submitted several other sick call requests; he alleges that Nurse Smalley "ignored the Plaintiff's requests by returning them to him without seeing him in sick call and giving a disposition on the requests stating that the doctor has already seen him about his pain."[8] Plaintiff further contends that after he resubmitted sick call requests, Nurse Smalley examined him at sick call by checking his vital signs, but refused to refer him to Dr. Bearden, stating that Dr. Bearden had instructed her not to refer the Plaintiff to him for any alleged pain.[9] Afterwards, the Plaintiff saw Dr. Bearden and told him his testicular pain was worsening each day; Dr. Bearden told him there was nothing wrong and refused to prescribe anything stronger than "phenylgesic".[10]

Plaintiff alleges that Dr. Bearden allowed him to suffer in pain for several months before scheduling him for a consultation with a urologist, who ordered a CAT scan. The results were normal; the urologist then ordered an ultrasound of Plaintiff's scrotum, which revealed that the Plaintiff possibly could have chronic Epididymitis. The urologist ordered Levaquin for Plaintiff.[11]

At Plaintiff's final urology appointment on December 29, 2005, he reported that he still felt a "slight" pain in his testicle, and, in addition, felt intense pain from his lower spine to his left hip and down his leg. The urologist expressed a possibility that there was something wrong

---

[7]  *See* Complaint at p. 5.

[8]  *See* Complaint at p. 7.

[9]  *See* Complaint at p. 7.

[10]  *See* Complaint at p. 8.

[11]  *See* Complaint at p. 7.

with Plaintiff's nerves and told Plaintiff he would recommend to Dr. Bearden that Plaintiff be allowed to consult with a neurologist as soon as possible. Plaintiff then followed up with Dr. Bearden, who told Plaintiff he would not order a consultation with a neurologist unless Plaintiff's condition worsened.[12]

Plaintiff seeks to have a consultation with a neurologist, and a follow-up with the urology clinic.[13] Plaintiff contends that Dr. Bearden and Nurse Smalley denied him adequate medical care, and that Defendants Warden Riley, Associate Warden Lloyd, and Associate Warden Counts were deliberately indifferent to his medical care,[14] and as a result, Plaintiff is suffering the physical injury of possible chronic Epididymitis.[15] Plaintiff also contends that Defendants Warden Riley, Associate Warden Lloyd, and Associate Warden Counts denied Plaintiff's grievances filed with respect to his medical care.[16] Furthermore, the Plaintiff alleges that since his arrival at Lieber CI, as a result of having been denied adequate medical care and as a result of the deliberate indifference of Defendants Warden Riley, Associate Warden Lloyd, and Associate Warden Counts, he has been prescribed psychiatric medication "for the mental injury inflicted upon him."[17] Plaintiff alleges he has continued to suffer "prolonged and extreme pain and unnecessary complications in the treatment of his illness."[18]

Finally, the Plaintiff alleges that on June 14, 2006, he was transferred to the Kirkland CI infirmary for an x-ray of his back. Plaintiff alleges that the x-ray technician, Defendant Ms.

---

[12]  *See* Complaint at p. 9.

[13]  *See* Complaint at p. 10.

[14]  *See* Complaint at p. 10.

[15]  *See* Complaint at p. 11.

[16]  *See* Complaint at p. 10.

[17]  *See* Complaint at p. 10.

[18]  *See* Complaint [1] at p. 11.

Regina, was "very hostile" towards him and said "[she] didn't like black people."[19] Plaintiff did not receive the x-ray, and was escorted from the area and transferred back to Lieber. Plaintiff contends that Ms. Regina deprived him of adequate medical care by refusing to perform the x-ray, which resulted in Plaintiff's continued suffering during the time he waited for another appointment for an x-ray.[20] (Subsequently, on August 9, 2006, Plaintiff had an x-ray taken at Kirkland CI and was informed that the results were "abnormal.") [16]

Plaintiff alleges that the Defendants Dr. Bearden, Nurse Smalley, and Ms. Regina were deliberately indifferent to Plaintiff's serious medical needs and deprived him of his right to adequate medical care under the Eighth Amendment, and he alleges torts of negligence and medical malpractice against those defendants.[21] Plaintiff further contends that Defendants Riley, Lloyd, and Counts' failure to intervene in the ongoing denial of adequate medical care after he filed administrative grievances amounts to deliberate indifference in violation of the Plaintiff's right to adequate medical care under the Eighth Amendment.[22]

## IV. PROCEDURAL HISTORY

On July 14, 2006, Plaintiff commenced this Section 1983 action against the defendants Dr. Bearden, Nurse Smalley, Warden Riley, Associate Warden Lloyd, Associate Warden Counts, and Ms. Regina (collectively, the "Defendants"), alleging deliberate indifference to his medical needs.[23] [1] Plaintiff then filed motions requesting access to the law library and for appointment of counsel. [4; 5] The undersigned issued an Order directing the issuance of summonses, and

---

[19]   *See* Complaint at p. 11.

[20]   *See* Complaint at p. 12.

[21]   *See* Complaint at p. 13.

[22]   *See* Complaint at pp. 13-14.

[23]   Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), should a limitations issue arise in this action. *See* Order dated July 20, 2006. [6]

directed the Defendants to file answers to the complaint [6], and also issued an Order [7] denying Plaintiff's motions. On August 14, 2006, the Defendants timely filed an Answer to the Plaintiff's Complaint which, in pertinent part, alleged as an affirmative defense that Plaintiff had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 (the "PLRA"). [12]

On August 23, 2006, Plaintiff filed two motions to file an amended or supplemental complaint. [15; 16] These motions were granted by the undersigned. [17] The Defendants timely filed an Amended Answer [18], and Plaintiff again filed a second motion requesting access to the law library [20], which was denied by an oral Order issued by the undersigned. [21] On September 19, 2006, Defendants' counsel requested an extension of time in which to file a motion for summary judgment. [23] The undersigned granted an extension by Order filed that same date. [24] Plaintiff thereafter filed a Motion for a preliminary injunction which requested that the court order the Defendants to provide Plaintiff with a follow-up visit to the urology clinic and with an examination by a neurologist. [25] The undersigned denied Plaintiff's motion for a preliminary injunction by a written Order filed on October 23, 2006. [26]

The Defendants filed their Motion for summary judgment on November 3, 2006. [27] On November 7, 2006, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' Motion, the summary dismissal procedure, and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days. [32] In response, on November 20, the Plaintiff filed a motion for extension of time to file a response to Defendants' Motion, which was granted by the undersigned. [33; 34] On January 5, 2007 the Plaintiff filed a second motion for an extension of time to respond, stating that he wished to conduct discovery prior to responding to the Defendants' Motion. [35] The Plaintiff's second motion for an extension of time was denied by the undersigned on January 6, 2007. [36] On January 23, 2007, the Plaintiff filed a

third motion for an extension of time in which to file a response to Defendants' Motion for summary judgment [37], which was denied by the undersigned, who ordered the Plaintiff to respond to the Defendants' Motion for summary judgment by February 13, 2007.  [38]  This Order specifically informed the Plaintiff that his failure to file a response to Defendants' motion would immediately result in the undersigned recommending dismissal of the action.

On February 5, 2007, the Plaintiff filed his fourth request for an extension of time in which to respond to Defendants' Motion, contending that on January 19, 2007, SCDC officials at Lee CI had confiscated all of Plaintiff's property, including the documents related to the case, and that as of January 31, 2007, his documents had not been returned to him.  [39]

On March 2, 2007, the Defendants filed a response in opposition to the Plaintiff's fourth request for an extension of time.  Although the Defendants stated that they consented to the Plaintiff's motion for an extension, they denied the Plaintiff's allegation that his legal papers had been withheld from him through January 31, 2007, and filed the affidavits of a Lee CI administrator and a Lee CI officer in support of their contention that Plaintiff's papers had been returned to him by January 31, 2007.  [40]  Based upon these affidavits, the undersigned issued an Order on March 3 which found that Plaintiff's legal papers had been returned to him by January 31, 2007, but nevertheless granted Plaintiff's fourth motion for an extension of time and ordered that Plaintiff file a response to Defendants' Motion with the Clerk's Office on or before March 15, 2007.  The court further informed the Plaintiff that if his response were not received by that date, the Plaintiff's case would be subject to dismissal for failure to prosecute.  [42]

On March 16, 2007, Plaintiff's filed a fifth motion for an extension of time to respond to Defendants' Motion for summary judgment and also filed a motion requesting access to the law library.  [44; 45]  Both motions were denied by the undersigned on March 16, 2007.  [46]

Because the Plaintiff failed to file a response to the Defendants' Motion by the March 15 deadline, the undersigned United States Magistrate Judge issued a Report and Recommendation on March 21, 2007 [48] which recommended that Plaintiff's complaint [1] be dismissed with

prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure because the Plaintiff had failed to prosecute his case. On March 23, 2007, the Plaintiff filed a Motion for leave to file a supplemental complaint, and on April 2, 2007, the Plaintiff filed a response in opposition to the Defendants' Motion for summary judgment. [50; 52] Accordingly, the case was re-referred to the undersigned for consideration of Plaintiff's response. The Defendants subsequently filed a reply to Plaintiff's response to Defendants' Motion for summary judgment, as well as a response in opposition to Plaintiff's Motion to Amend/Correct the Complaint. [52; 54] Thus, the matter is now ripe for review by the undersigned.

## V.  PENDING MOTIONS

### A.  The Plaintiff's Motion to Amend/Supplement

First, the court will address the issue of the Plaintiff's motion, filed on March 23, 2007, for leave to file a supplemental complaint, which the court construes as a motion to amend the complaint. As noted above, the Defendants had filed a Motion for summary judgment some five (5) months earlier, on November 3, 2006. [27]

Pursuant to Fed.R.Civ.P. 15, a party may amend his pleading once at any time before a responsive pleading has been filed. After the opposing party has answered, however, a plaintiff must seek leave of the court to amend. Although Federal Rule 15(a) directs the court to grant leave to amend "when justice so requires," it is well-settled that the "disposition of a motion to amend is within the sound discretion of the district court". *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), *cert. denied*, 485 U.S. 977 (1988), *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, a court may deny a motion to amend a pleading "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." *Deasy v. Hill*, 833 F.2d at 40, *citing Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

Looking to the case at hand, this court finds that the events giving rise to Plaintiff's complaint occurred between December 2004 and June 20, 2006. The Plaintiff's proposed

amendment seeks to add additional facts, which occurred in March 2007, and which presumably the Plaintiff believes are connected to the facts alleged in the complaint. The court disagrees, and does not find that these additional allegations are sufficiently related to the facts as alleged in the complaint. Furthermore, and more importantly, the court finds that the Plaintiff's motion, filed some five months after the Defendants' Motion for summary judgment, is not timely, and it would be unduly prejudicial to the Defendants to permit the Plaintiff to amend his complaint at this time. Therefore, it is at the undersigned's discretion that it is recommended that the Plaintiff's motion for leave to file a supplemental complaint [50] be denied.

### B.  The Defendants' Motion for Summary Judgment

The determination of Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 323; Fed. R. Civ. P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence. *Ross*, 759 F.3d at 364. Put another way, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Genuine

disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

      Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## VI. DISCUSSION

### A. Exhaustion of Administrative Remedies

      The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a Section 1983 action. 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

      It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement

"applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Jones v. Bock*, – U.S. –, 127 S.Ct. 910, 2007 WL 135890, *8 (Jan. 22, 2007), *and Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) (in a unanimous decision, the Supreme Court held that the PLRA requires administrative exhaustion even if grievance procedure does not allow monetary damages and prisoner seeks only monetary damages, so long as grievance tribunal has authority to take some responsive action).

The Supreme Court has stressed that exhaustion must take place prior to the commencement of the civil action in order to further the efficient administration of justice:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. 534 U.S. at 524-525 (emphasis added).

Although the lack of exhaustion of administrative remedies is, generally, considered an affirmative defense and not a jurisdictional infirmity in the Fourth Judicial Circuit, if the lack of exhaustion is apparent from the face of the prisoner's complaint or from additional facts requested by the court, *sua sponte* dismissal prior to service of the complaint is appropriate. *See, e,g., Beatty v. West*, 2007 WL 1485860 (D.S.C. May 17, 2007), *citing Anderson v. XYZ Correctional Health Services*, 407 F.3d at 683.

As a threshold matter, the court finds that this action should be dismissed with respect to the Defendant Ms. Regina because the Plaintiff failed to exhaust his administrative remedies prior to filing suit against her. By the plain language of the statute, exhaustion of administrative remedies is a precondition to the filing of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the Section 1997e(a)

requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance procedure after commencing the lawsuit. *See Harris v. Bureau of Prisons*, 2007 WL 2220514 at *3 (W.D. Va. July 31, 2007), *citing Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002), *in turn citing Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit). In the present case, Plaintiff stated in his Complaint that he "has recently submitted an administrative grievance for the actions of defendant [Ms. Regina], which he has not yet received a response to at the time of filing this complaint."[24] Therefore, because the Plaintiff has admitted that he failed to exhaust administrative remedies with respect to Ms. Regina prior to filing suit, it is recommended that this action be dismissed against her. *See, e.g. Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (2005) (A district court may sua sponte dismiss a complaint where a prisoner's failure to exhaust is apparent from the face of the complaint.). As for the other Defendants, the court finds that the Plaintiff has exhausted his administrative remedies, and thus will turn to the merits of the case.

### B.  Plaintiff's Section 1983 Claim Against Dr. Bearden and Nurse Smalley

To state a viable Section 1983 claim with regard to medical care while incarcerated, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, it is well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 105. However, this "does not mean . . . that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. To prove a claim of deliberate indifference, a plaintiff must show that a defendant's "action or

---

[24]     *See* Complaint at p. 12.

inaction (1) result[ed] in or creat[ed] a sufficiently serious risk of a deprivation that objectively results in denial of the 'minimal civilized measure of life's necessities' and (2) a 'sufficiently culpable state of mind.'"  *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997) (*quoting Farmer v. Brennan*, 511 U.S. 825, 831-34 & n. 2 (1994)).  Thus, an officer is deliberately indifferent to a substantial risk of harm when that officer "knows of and disregards" the risk.  *Farmer*, 511 U.S. at 837.  In order to be liable under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*.  The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation.  *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).  Courts have recognized that prisoners do not have "unqualified access to health care" and that "the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is serious".  *Shakka v. Smith*, 71 F.3d 162 (4th Cir. 1995).  Ultimately, "[d]eliberate indifference is a very high standard--a showing of mere negligence will not meet it."  *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).  Moreover, mere allegations of malpractice do not state a claim for deliberate indifference.  *See, e.g., Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Thus, to state a cognizable Section 1983 claim, the Plaintiff must make two showings: (1) the existence of a serious medical need and (2) deliberate indifference exhibited to that need by the Defendants.  The Plaintiff cannot show either in this case.

### 1.  Lack of a Serious Medical Need

A serious medical need for the purposes of a Section 1983 analysis is a need that a reasonable prison official would recognize as presenting an apparent risk of danger.  *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) (obvious risk created by cardiac condition); *Cooper v. Dyke*,

814 F.2d 941 (4th Cir. 1987) (obvious risk created by gunshot wound); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978) (delay in treating obviously broken arm). When there is no "serious need," there can be no constitutional violation for inadequate medical treatment. *Belcher v. Oliver*, 898 F.2d 32, 35 (4th Cir. 1990), *citing Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988)).

      The medical needs with which Plaintiff presented to Dr. Bearden and Nurse Smalley fall well short of the standard developed by the Fourth Circuit as to what constitutes a "serious need." Plaintiff's problem began as a stomach pain, which Plaintiff presented to Dr. Bearden and Nurse Smalley on December 10, 2004. (*See* Defendants' Exhibit A, attached to their Memorandum (hereinafter "Exhibit A") – SCDC 033). After Dr. Bearden ordered several tests to rule out a stomach problem, all of which came back normal, Plaintiff's alleged pain migrated to his mid-section (i.e., intestinal region), which he reported to Nurse Smalley on April 8, 2005. (Exhibit A – SCDC 0028-030). After Dr. Bearden ordered a new set of medical tests, all of which, once again, were normal, Plaintiff's pain moved to his left testicle. (Exhibit A – SCDC 028; SCDC – 025-026). After Dr. Bearden ordered tests and a urology consult for this new pain location, Plaintiff's pain moved yet again, this time to his left buttock. (Exhibit A – SCDC 015-016).

      The record reflects that only one of Plaintiff's medical tests revealed something even slightly abnormal: the testicular ultrasound that showed a possible epididimytis, a routine, non-threatening infection that is treated with antibiotics. (Exhibit A – SCDC 017-018). Indeed, the Plaintiff was prescribed antibiotics for this condition.

      Plaintiff simply cannot prevail in his Section 1983 claim against Dr. Bearden or Nurse Smalley because these problems, which Plaintiff claims these Defendants were deliberately indifferent to, were not serious medical needs as contemplated by Eighth Amendment jurisprudence. In short, Plaintiff never exhibited any symptoms consistent with a serious medical need, and thus he cannot meet the first prong of the Section 1983 analysis.

## 2. A Lack of a Showing of Deliberate Indifference.

The Plaintiff's claims against Dr. Bearden and Nurse Smalley also fail as a matter of law because Plaintiff cannot prove that they acted with deliberate indifference toward any medical need that he had. To establish deliberate indifference for a Section 1983 claim, the Plaintiff must show acts or omissions evidencing a sufficiently culpable state of mind to rise to the level of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1979); *Nicodemus*, 979 F.2d at 991. A showing of mere negligence is insufficient. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Salazar v. City of Chicago*, 940 F.2d 233, 2238 (7th Cir. 1991) (negligence or even gross negligence does not violate the Due Process Clause; rather, a detainee must show reckless or intentional conduct to establish an inadequate medical treatment claim). In addition, an alleged delay in providing treatment fails to amount to a constitutional violation. *See, e.g., Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir. 1993) (delay in providing medical treatment to prisoner did not amount to deliberate indifference where such delay did not cause further injury); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (no constitutional violation in failing to provide medical treatment during 14 hours of interrogation despite the existence of visible injuries).

Likewise, "mere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former, although if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice." *Farmer v. Brennan*, 511 U.S. 825 (1994). Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-336 & n. 3 (1986); *Davidson*, 474 U.S. 345-348; *and Ruefly v. Landon*, 825 F.2d 792, 793-794 (4th Cir. 1987). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

From December 10, 2004, when Plaintiff made his first complaint to Tyger River CI medical personnel about stomach pain, to February 6, 2006, when Plaintiff was transferred to Lieber Correctional Institution (and, thus, out of the care of Dr. Bearden and Nurse Smalley), Tyger River medical personnel, including Dr. Bearden, Nurse Smalley, and many others, saw Plaintiff **103** times to address various medical complaints. (Exhibit A – SCDC 007-033). Of those episodes, 51 involved the migrating pain which is the subject of this lawsuit. (Id.). Dr. Bearden approached the problems as follows:

> a. Stomach pain
> In an attempt to diagnose a stomach problem, Dr. Bearden ordered multiple blood labs, a urinalysis, and an upper gastroenterology scan series performed at a private imaging center in the community. (Exhibit A – SCDC 0028-032). The results of all of these tests were normal. (Id.).
>
> b. Mid-section/intestinal pain
> When Plaintiff claimed that the pain had moved to his mid-section, Dr. Bearden ordered another urinalysis and a barium enema, which involved another scan at a private imaging center. (Exhibit A – SCDC 0025-028). The results of these tests were normal. (Id.).
>
> c. Testicular pain
> When Plaintiff insisted that the pain had migrated to his left testicle, the nurses at first had him treat it with Motrin and hot compresses. (Exhibit A – SCDC 0024-025). When Plaintiff continued to complain, Dr. Bearden ordered a third urinalysis (again, normal) and arranged a consult with a private urologist in the community. (Exhibit A – SCDC 023-024). Dr. Bearden followed up on the urologist's recommendations, ordering a CT scan of Plaintiff's abdomen and pelvis, the results of which were normal. (Exhibit A – SCDC 021-023). Dr. Bearden also sent Plaintiff to another imaging center for an ultrasound of his testicle at the urologist's suggestion. (Exhibit A – SCDC 020). When the urologist concluded that Plaintiff had possible epididimytis, Bearden prescribed the antibiotic Levaquin, which, according to Plaintiff, fixed the problem. (Exhibit A – SCDC 012; SCDC 017).
>
> d. Left buttock/leg pain
> Finally, when all the previous tests had essentially come back normal and the one possible problem, epididmytis, had cleared with the help of the antibiotic, Plaintiff claimed that the pain had migrated to his buttocks and leg. Dr. Bearden, using his professional judgment, concluded that a neurology consult was not indicated and recommended that Plaintiff address his chronic pain with over-the-counter medication. (Exhibit A – SCDC 010).

With respect to these facts, it cannot be said that the Defendants Dr. Bearden and/or Nurse Smalley were deliberately indifferent to a serious medical need. First, Plaintiff has failed to produce any evidence (apart from those allegations contained in his pleadings) that he had any

serious medical need. Second, Plaintiff is unable to demonstrate any "deliberate indifference" to his health care needs. Based on the sheer number of times Nurse Smalley and/or Dr. Bearden and examined Plaintiff, and based on the many tests Dr. Bearden ordered to diagnose his complaints (where the test results were nearly all normal), Dr. Bearden and Nurse Smalley contend that they were attentive to all of Plaintiff's medical needs. Although the Plaintiff may disagree with the course of treatment determined by Nurse Smalley and Dr. Bearden, it does not follow that these Defendants were deliberately indifferent to his medical needs. As stated above, a mere disagreement about the course of medical treatment is insufficient to establish a Section 1983 claim. Therefore it is recommended that summary judgment be granted in favor of Dr. Bearden and Nurse Smalley.

### C. Plaintiff's Section 1983 Claims against Warden Riley, Associate Warden Lloyd, and Associate Warden Counts

Construing the Plaintiff's pleadings broadly, as this court must do, it appears that the Plaintiff filed this action against Warden Riley, Associate Warden Lloyd, and Associate Warden Counts because these Defendants handled Plaintiff's grievances, and thus should have been aware of Dr. Bearden and Nurse Smalley's allegedly inadequate medical care. It appears that the Plaintiff contends that by denying the grievances, these Defendants, too, were deliberately indifferent to his serious medical needs.

In order to establish that these Defendants were deliberately indifferent to his serious medical needs, the Plaintiff first has the burden of showing that the conduct that these Defendants reviewed – the conduct of Dr. Bearden and Nurse Smalley – amounted to a deliberate indifference to a serious medical need. As noted above, however, Plaintiff can show neither that his need was a serious need that triggered Constitutional protection nor that Dr. Bearden and Nurse Smalley were deliberately indifferent to a serious medical need. Since the conduct that Riley, Lloyd, and Counts reviewed does not rise to the level of deliberate indifference to a serious medical need, their denial of Plaintiff's grievances and their failure to

intervene on Plaintiff's behalf cannot, as a matter of law, constitute conduct actionable under Section 1983.

In addition, the findings of Riley, Lloyd, and Counts with respect to the Plaintiff's grievances show that they reviewed Plaintiff's medical records and concluded that he had received adequate medical care. Accordingly, Plaintiff cannot show that these Defendants acted with deliberate indifference to a serious medical need, and it is recommended that these Defendants be granted summary judgment.

## RECOMMENDATION

Based on the foregoing, it is recommended that the Defendants' **Motion for Summary Judgment [27] be granted**; and that Plaintiff's **Motion to Amend/Correct [50] be denied.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

August 7, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).