**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| SAMMIE STROMAN, # 242033, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 9:06-2055-PMD-GCK |
| v. | ) | |
| | ) | |
| RICHARD BEARDEN, DONNA | ) | **ORDER** |
| SMALLEY, TIM RILEY, BARNEY | ) | |
| LOYD, J. C. COUNTS, AND JANE | ) | |
| DOE, A/K/A MS. REGINA | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Sammie Stroman ("Plaintiff"), an inmate at the Lieber Correctional Institution ("LCI") and formerly an inmate at the Tyger River Correctional Institution ("TRCI"), filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Defendants filed a Motion for Summary Judgment. The record contains the report and recommendation of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636 (b)(1)(B), which recommend that Defendants' motion for summary judgment be granted, and Plaintiff's motion to amend the original Complaint be denied. A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. 636 (b)(1). Plaintiff filed timely objections to the Magistrate Judge's recommendations.

**BACKGROUND**

On July 18, 2006, Plaintiff brought suit pursuant to 42 U.S.C. § 1983 against Richard Bearden, Donna Smalley, Tim Riley, Barney Loyd, J.C. Counts, and Jane Doe, a/k/a Ms. Regina.

Plaintiff was incarcerated on June 5, 1997. Plaintiff asserts that between the dates of December 10, 2004 and June 20, 2006, his Eighth Amendment Cruel and Unusual Punishment

Clause rights were systematically violated by corrections officials and medical personnel, who showed deliberate indifference to Plaintiff's serious medical needs.

On December, 10, 2004, while incarcerated at TRCI, Plaintiff visited Defendant Dr. Richard Bearden first complaining of pain in his back and stomach. (Defs.' Ex. A-SCDC 033.) From this date until his transfer to LCI on February 6, 2006, Plaintiff experienced recurring severe pain which appeared alternately in his back, abdomen, testicles, hips, and buttocks. Plaintiff spoke with medical personnel, mainly Bearden and Defendant Nurse Donna Smalley, on a regular basis regarding his condition. Plaintiff alleges that despite being aware of the severe pain he was in, Bearden believed there was nothing wrong with Plaintiff and refused to see him. (Compl. at 7.) Plaintiff alleges that Bearden instructed Smalley, who was in charge of scheduling appointments for inmates to see Bearden, not to allow Plaintiff to make an appointment. *Id*. Plaintiff also alleges that Bearden allowed him to suffer unnecessarily for months before referring him to a urologist. *Id*. at 8. During this time period, Plaintiff alleges that the pain caused him to become depressed and suffer from sleep deprivation, all of which he made known to Bearden. *Id*. at 7. On a follow-up appointment with the urologist, the urologist suggested that the Plaintiff's pain may be caused by nerve problems, and recommended to Plaintiff that he seek the help of a neurologist. *Id*. at 9. Despite the urologist's recommendation, Bearden refused to refer Plaintiff to a neurologist because he did not believe Plaintiff's condition was severe enough to warrant such a recommendation, although he advised Plaintiff that Plaintiff could schedule an appointment with a neurologist at his own expense. *Id*.; (Defs.' Mot. to Dismiss at 7.)

In response to the perceived inadequacy of the care Plaintiff was receiving, he filed two grievances each against both Bearden and Smalley, asserting that they had not provided him with adequate medical care and had violated SCDC procedures. (Compl. at 10.) Neither Warden Tim

Riley nor Associate Wardens Barney Loyd or J.C. Counts took any action in response to any of Plaintiffs' grievances. *Id.* Loyd denied Plaintiff's first grievance (against Bearden) on the grounds that Plaintiff had received adequate medical care and that Bearden had acted in accordance with SCDC standards. Counts denied Plaintiff's other three grievances (one against Bearden, two against Smalley), on the same grounds. Plaintiff appealed all three decisions, and his appeals were denied.

While Plaintiff believes his medical care while incarcerated at TRCI was inadequate and personnel were unresponsive to his medical condition, South Carolina Department of Corrections ("SCDC") records show (and Plaintiff does not dispute) that in response to his condition, Plaintiff received the following treatment:

1. Defendant Bearden met with Plaintiff on eight occasions when Plaintiff had complained of pain in various regions of his body.[1]

2. Defendant Bearden arranged for Plaintiff to meet with specialists to treat Plaintiff's condition on four occasions.[2]

3. Defendant Bearden arranged for the performance of eight different tests to determine the cause of Plaintiff's pain.[3]

---

[1] Bearden consulted with Plaintiff regarding Plaintiff's condition on: December 10, 2004; January 14, 2005; March 22, 2005; April 19, 2005; May 13, 2005; June 27, 2005; December 2, 2005; December 29, 2005; and January 17, 2006. (Defs.' Ex. A at 010, 012, 015, 023, 025-026, 028, 029, 032, 033.) The court also notes that in addition to the eight times Bearden met with Plaintiff regarding the pain which forms of the basis of Plaintiff's present § 1983 claim, SCDC records show that Bearden met with Plaintiff on numerous other occasions during this time period to help Plaintiff with other health problems.

[2] Plaintiff visited a gastroenterologist on April 5, 2005. *Id.* at 028. Plaintiff visited a urologist on: August 4, 2005; September 29, 2005; and December 29, 2005. *Id.* at 012, 020, 023.

[3] Bearden arranged for urinalysis tests to be performed on: December 10, 2004; January 14, 2005; April 19, 2005; and June 27, 2005. *Id.* at 023, 028, 032, 033. Bearden arranged for a gastroenterologist to perform an upper gastroenterology series on April 5, 2005. *Id.* at 028. Bearden arranged for a scan and a barium enema, performed on May 2, 2005. *Id.* at 027. Upon

       4.       Defendant Bearden and other medical/nursing personnel, including Defendant Smalley, provided Plaintiff with six different types of medicine to try to help alleviate Plaintiff's pain.[4]

On February 6, 2006, Plaintiff was transferred from TRCI to LCI. In April 2006, Plaintiff began to complain of pain in his left side and leg. In response, LCI officials scheduled an x-ray for June 20, 2006.

Since LCI did not have the proper equipment or facilities to perform an x-ray, Plaintiff was transported to Kirkland Correctional Institute ("KCI") on June 20. However, the x-ray was not performed on this date, and had to be re-scheduled for a later date. Plaintiff alleges that Defendant Jane Doe, a/k/a Ms. Regine, the nurse who was to perform the x-ray, was "very hostile" towards the Plaintiff, and, when Plaintiff questioned her hostility, she responded, "Because I don't like black people." (Compl. At 11.) At that point, Plaintiff alleges Doe advised corrections officers to remove Plaintiff from the premises, and that she refused to perform the x-ray.[5] *Id.* Plaintiff alleges that not

---

the recommendation of a urologist, Bearden ordered a CT scan, which was performed on the Plaintiff on August 23, 2005. *Id.* at 022. Once again following the urologist's recommendation, Bearden ordered an ultrasound of Plaintiff's scrotum, which was performed on October 27, 2005. *Id.* at 019. The December 10, 2004 urinalysis showed that Plaintiff had contracted Trichomonas, a sexually-transmitted disease for which Plaintiff was prescribed treatment. *Id.* at 033. The ultrasound showed a slightly enlarged epididymis, from which the urologist concluded that Plaintiff possibly had epididymitis, a minor infection, and an antibiotic was prescribed. *Id.* at 019. The other six tests showed no abnormalities and no indication of what was causing Plaintiff's pain.

    [4] Plaintiff was provided with: Flagyl (for Plaintiff's Trichomonas symptoms), Tylenol, Pepcid, Percogesic, Motrin, and Levaquin (an antibiotic designed to eliminate Plaintiff's possible epididymitis infection). *Id.* at 017, 024, 029, 032, 033.

    [5] SCDC records indicate that the x-ray was not performed as scheduled on June 20, 2006 because, while Plaintiff was waiting for the x-ray to begin, he began masturbating and refused to stop when ordered to do so by corrections officers and medical personnel. *Id.* at 002. According to the records, Plaintiff had exhibited similar behavior on at least one prior occasion. When Plaintiff was taken to get an ultrasound on October 27, 2005, the technician reported that

receiving this x-ray caused him to continue to experience severe pain and suffering until the x-ray could be re-scheduled.  According to Defendants, this x-ray was re-scheduled and taken at a later date, and showed nothing abnormal.  (Defs.' Mot. to Dismiss at 8.)

## **PROCEDURAL HISTORY**

Plaintiff filed this § 1983 action on July 18, 2006, seeking an unspecified amount of nominal, compensatory, and punitive damages against each defendant, as well as an injunction forcing Defendants to provide Plaintiff with the services of a neurologist and a urologist. [1].  On October 18, Plaintiff filed a Motion for Preliminary Injunction to force SCDC to provide Plaintiff with access to a neurologist and a urologist. [25].  This Motion was denied by United States Magistrate Judge George C. Kosko on October 23.  [26].  On November 3, Defendants filed a Motion for Summary Judgment.  [27].

On November 20, Plaintiff filed a motion for extension of time to file a response to Defendants' Motion, which was granted by the Magistrate Judge.  [33, 34].  On January 5, 2007, Plaintiff filed a motion for another extension of time to respond, which was denied by the Magistrate Judge on January 6.  [35, 36].  On January 23, Plaintiff filed a third motion for an extension of time to respond, which was again denied by the Magistrate Judge on January 24.  [37, 38].  Plaintiff was ordered to file a response to Defendants' Motion by February 13, or the Magistrate Judge would recommend dismissal of the action.  On February 5, Plaintiff filed a fourth motion for an extension of time to respond, and claimed that he had been unable to respond because SCDC officials had confiscated all of Plaintiff's property, including materials related to the case.  [39].  On March 2, Defendants responded, and, although they denied having confiscated any of Plaintiff's property,

---

Plaintiff began masturbating while she was trying to conduct the test.  Correctional officers accompanying Plaintiff to the facility had to hold Plaintiff's hands above his head so that the technician could complete the ultrasound.  *Id*. at 019.

Defendants consented to Plaintiff's motion for an extension. [40]. The Magistrate Judge thus granted Plaintiff's motion and ordered him to respond to Defendants' Motion by March 15. [42]. On March 16, Plaintiff filed a fifth motion for an extension to respond, which was denied by the Magistrate Judge. [44, 46]. On March 21, Magistrate Judge Kosko filed a Report & Recommendation, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B), that recommended to the court that Plaintiff's Complaint be dismissed with prejudice for his failure to respond to Defendants' Motion in a timely manner.[6] [48]

On March 23, Plaintiff filed a Motion for Leave to File a Supplemental Complaint. [50]. On April 2, Plaintiff filed his response in opposition to Defendants' Motion for Summary Judgment. [52]. The case was re-referred to Magistrate Judge Kosko for consideration of Plaintiff's motion and response. On April 12, Defendants filed a Reply to Plaintiff's Response, and separately filed a Response in Opposition to Plaintiff's Motion to Amend. [54, 56]. On August 7, 2007, the Magistrate Judge, in accordance with 28 U.S.C. § 636 (b)(1)(B), issued a second Report and Recommendation ("R&R") regarding the Plaintiff's request to amend the Complaint and his Response to the Defendants' Motion, in which the Magistrate Judge recommended to this court that Defendants' Motion for Summary Judgment be granted, and Plaintiff's Motion to Amend the Complaint be denied. [63]. On August 17, Plaintiff filed his timely objections to the Magistrate Judge's second report and recommendations. [66].

## STANDARD OF REVIEW

### A.     Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the court. The recommendation has

---

[6] Since the matter was re-referred to the Magistrate Judge after Plaintiff filed his Response to Defendants' summary judgment motion and moved to amend his Complaint, the court does not consider the Magistrate Judge's first R&R in this Order.

no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the report and recommendation to which objections are made and the basis for those objections. *Id.* After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted in full and specifically incorporated into this Order.

### B.     Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting

*Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## **OBJECTIONS**

**A.    Defendants' Motion to Dismiss**

*1.    Plaintiff's Failure to Exhaust All Available Administrative Remedies as to Jane Doe, a/k/a Ms. Regina*

The Magistrate Judge recommended to the court that Defendants' Motion for Summary Judgment be granted as to Defendant Jane Doe, a/k/a Ms. Regina, because Plaintiff did not exhaust all administrative remedies available to him. (R&R at 12.)

Plaintiff objects to the recommendation. Plaintiff acknowledges that he did not exhaust all administrative remedies available to him, but claims he did so "to prevent irreparable injuries." (Objections at 2.) Contrary to the official SCDC reports,[7] Plaintiff claims that the reason that his x-ray was not performed on June 20 was because Defendant Doe was hostile and refused to x-ray Plaintiff because he is black. (Compl. at 11.) According to Plaintiff, this delay caused him continued pain and suffering, and constituted deliberate indifference to his serious medical condition on the part of Defendant Doe. *Id.* at 12. Plaintiff claims that the exhaustion requirement should not be used to grant summary judgment on his claims against Defendant Doe, since he initially filed a temporary restraining order to avoid irreparable injury and he has continued to seek redress against

---

[7] According to the SCDC medical records, the x-ray was postponed until a later date because, while waiting for the x-ray to be performed, Plaintiff removed his penis from his jumpsuit and began masturbating, and refused to stop when ordered to do so by corrections officers. (Defs.' Ex. A at 002.)

Doe through the administrative process.[8]

In 1996, Congress passed the Prison Litigation Reform Act ("PLRA") "[i]n response to an ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005) (citations omitted). The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the "PLRA's exhausting requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

The exhaustion requirement requires that all available administrative remedies be exhausted prior to the commencement of the litigation. 42 U.S.C. § 1997e(a) ("No action shall be *brought* . . . until such administrative remedies as are available are exhausted.") (emphasis added). The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 126 S. Ct. at 2385 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to

---

[8] In his original Complaint, Plaintiff informed the court that he had recently filed a formal grievance against Doe, but had not yet received any response. (Compl. at 12.) As of August 17, Plaintiff reported that his pending grievance was on "step (2) of the grievance process." (Objections at 3.)

frustrate both purposes of the PLRA's exhaustion requirement.

Therefore, if Plaintiff has in fact sought administrative resolution since filing the Complaint, it has no bearing on the court's decision as to whether the Plaintiff exhausted all available administrative remedies.

Plaintiff also claims that the PLRA's exhaustion requirement should not apply to him, as he would have suffered irreparable injury had he waited for the outcome of the grievance procedure against Doe before filing a § 1983 action against her.

As an initial matter, it is not clear to this court that an irreparable injury exception to the PLRA's exhaustion requirement exists. The very case Plaintiff cites for the irreparable injury exception in fact refused to read an irreparable injury exception into the PLRA, stating:

> The PLRA contains nothing expressly foreclosing courts from exercising their traditional equitable power to issue injunctions to prevent irreparable injury pending exhaustion of administrative remedies. The district court therefore had no need to recognize an irreparable injury exception to the PLRA's exhaustion requirement; the court had inherent power to protect the prisoners while they exhausted prison grievance procedures.

*Jackson v. District of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001). *But see Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001) (holding that where an inmate needs urgent medical relief, the prison administrative procedures may have been inadequate, and a district court's dismissal of § 1983 claims and denial of injunctive relief for failure to exhaust may have been improper).

However, even assuming *arguendo* an irreparable injury exception to the PLRA's exhaustion requirement, Plaintiff has not presented any allegations that could lead a reasonable finder of fact to find that Defendant Doe was somehow placing Plaintiff at risk of irreparable injury. Plaintiff did file a Motion for Preliminary Injunction with the court, but its only allegation of irreparable harm was that Plaintiff was suffering irreparable harm by being denied access to a neurologist and urologist. Plaintiff does not assert anywhere in the record that Doe had any role in denying him

access to physicians and/or specialists.

Plaintiff also makes no allegations that he suffered irreparable harm by the delay in taking his x-ray. Defendants assert, and Plaintiff has not disputed, that the x-rays were rescheduled and performed at a later date, and showed nothing abnormal that led to any improvement in Plaintiff's condition. (Defs.' Mot. for Summ. J. at 8.) Since the procedure produced no improvements in Plaintiff's diagnosis and condition, the court is at a loss to see how Defendant Doe subjected Plaintiff to irreparable harm in any way, shape, or form.

As Plaintiff admits that he did not exhaust all available administrative remedies, and has presented no issue of material fact as to any threat of irreparable harm presented by Defendant Doe, the court finds that Plaintiff failed to exhaust all available administrative remedies as required by 42 U.S.C. § 1997(e). Accordingly, the court finds that the Magistrate Judge correctly recommended that Defendant Doe, a/k/a Ms. Regina's Motion for Summary Judgment should be granted.

### 2.    *Plaintiff's Deliberate Indifference Claim*

The Magistrate Judge recommended to the court that Defendants' Motion for Summary Judgment be granted because he had shown neither a serious medical need, nor deliberate indifference to such a need by any of the Defendants. (R&R at 14-19.)

Plaintiff objects to the recommendation, asserting that he was in severe pain throughout this time period, which constituted a serious medical need, that Defendants Bearden and Smalley exhibited deliberate indifference to this need by denying him adequate medical care, and that Defendants Riley, Loyd, and Counts exhibited deliberate indifference by failing to respond to Plaintiff's grievances against Bearden and Smalley. (Objections at 4-5).

It is well established that deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment

contravening the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). To prove a claim of deliberate indifference to a serious injury under the Eighth Amendment, a plaintiff must show that a defendant's "action or inaction [1] result[ed] in or creat[ed] a sufficiently serious risk of a deprivation that objectively results in denial of the 'minimal civilized measure of life's necessities' and [2] a 'sufficiently culpable state of mind.'" *Winfield v. Bass,* 106 F.3d 525, 531 (4th Cir. 1997) (quoting *Farmer v. Brennan,* 511 U.S. 825, 831-34 & n. 2 (1994)). In order to be liable for deliberate indifference, the plaintiff must prove that the official was both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also that he had drawn the inference. *See Young v. City of Mount Rainer*, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care."). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975).

As the Magistrate Judge notes, the mysterious migrating nature of Plaintiff's pain is substantially different in nature than the severe medical conditions typically recognized as creating "serious medical needs" for deliberate indifference purposes. *See, e.g., Wright v. Moore,* 182 Fed. Appx. 188 (4th Cir. 2006) (cancer); *Moore v. Bennette*, 97 Fed. Appx. 405 (4th Cir. 2004) (Hepatitis C); *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) (cardiac condition); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987) (gunshot wound); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978) (severely broken arm). During the time in question, Plaintiff consulted with physicians and nurses on numerous occasions, including specialists, and underwent a number of different tests. Throughout all of this, the only diagnosable conditions any of the medical personnel who treated Plaintiff could identify were the easily-treatable sexually-transmitted disease Trichomonas, and a "possible" epididymitis

infection. In his Objections, Plaintiff claims that he has recently been diagnosed with arthritis, although he has produced no evidence of such a diagnosis.

However, even if the court takes Plaintiff's unverified, self-supporting statements at face value and acknowledge that his various pains represent a serious medical need, Plaintiff has failed to show deliberate indifference on the part of any of the Defendants. Plaintiff's SCDC medical file reveals that during the fourteen months he was incarcerated at TRCI, he met with a nurse or a physician 103 times, 51 of which specifically concerned the medical condition at issue. (Defs.' Ex. A.) These included eight individual consultations with Defendant Bearden, four visits to specialists, the performance of eight tests, and the prescription of six different types of medicine. *Id.*

Plaintiff's main assertion is that Defendants exhibited deliberate indifference because they failed to adequately treat his problem by taking actions such as not referring him to a neurologist and prescribing him ineffective medicines. However, the facts as asserted at most support a claim of negligence, or possibly even negligence rising to the level of malpractice. The Supreme Court of the United States has explicitly held that such conduct does not constitute deliberate indifference:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106. *See also id.* ("[M]ere disagreements between doctor and patient about the course of treatment do not reflect 'deliberate indifference' on the part of the former . . ."); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of the doctors in missing the diagnosis does not, by itself, support an inference of deliberate indifference by the doctors to Johnson's medical needs."). Similarly, alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury.

*Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir. 1993).

Even viewing all assertions and inferences in the light most favorable to Plaintiff, the court cannot find any material issue of fact regarding Plaintiff's claim of deliberate indifference. Plaintiff's voluminous medical record clearly demonstrates that throughout the period in question, Plaintiff received regular, comprehensive medical treatment for his ailment. That it was allegedly ineffective, while unfortunate, does not raise an issue of constitutional proportions, and Plaintiff's claim of deliberate indifference in violation of his Eighth Amendment rights fails as a matter of law.

Accordingly, the court finds that the Magistrate Judge correctly recommended that Defendants' Motion for Summary Judgment should be granted.

### B. Plaintiff's Motion to Amend His Complaint

The Magistrate Judge recommended to the court that Plaintiff's Motion to Amend his original Complaint be denied. (R&R at 10.) In the Motion, Plaintiff seeks to allege further facts involving his March 2007 visits to an orthopedic specialist, who diagnosed him with arthritis, and a urologist, who recommended that he visit a neurologist. (Pl.'s Mot. to Amend Compl.) The Magistrate Judge found that these later facts were insufficiently related to the events of December 2004-June 2006 which form the basis of Plaintiff's Complaint. The Magistrate Judge also found that since Plaintiff had filed his Motion five months after Defendants had filed their Motion for Summary Judgment, it would be unduly prejudicial to allow Plaintiff to Amend his Complaint at this time.

Plaintiff objects to this recommendation. He asserts that the new facts concerned visits to physicians concerning the same medical condition which forms the basis of the present § 1983 action, so it is closely related to the facts alleged in the original Complaint. (Objections at 2.) He also objects to the Magistrate Judge's recommendation that the Motion is untimely, and that allowing him to amend the Complaint would be unduly prejudicial to the Defendants. *Id.* at 1.

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend a pleading "be freely given when justice so requires." While this court is given discretion to deny the motion to amend, "that discretion is limited by the interpretation given Rule 15(a) in *Foman* [*v. Davis,* 371 U.S. 178 (1962)], 'and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir. 1987) (citation omitted). Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986)) (emphasis in original). A delay in bringing a proposed amendment is insufficient reason to deny leave to amend. *Id.*

A court may deny a party's motion to amend if doing so would be futile. *See In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir.2005) ("Leave to amend need not be given when amendment would be futile."). For a motion to amend to be denied for futility, the amendment must be "clearly insufficient or frivolous on its face." *Oroweat Foods Co.,* 785 F.2d at 510-511; *see also Rambus, Inc. v. Infineon Tech., AG,* 304 F.Supp.2d 812, 819 (E.D.Va. 2004) ("Courts generally favor the 'resolution of cases on their merits' . . . [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, *e.g.*, under motions to dismiss or for summary judgment, . . . , or for resolution at trial.") (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980))*; see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F.Supp.2d 419, 423 (D. Md. 2001).

However, Plaintiff's new allegations, when combined with the allegations in the original Complaint, fail to present any issue of material fact on his deliberate indifference claim. As a result

of Plaintiff's March visit to an orthopedic specialist, he was diagnosed with arthritis, which the physician informed Plaintiff was causing the pain in his back and left hip. (Objections at 2.) But even examining this information in the most favorable possible light to Plaintiff, this could at most establish that Defendants had acted negligently, or possibly even committed malpractice, in failing to correctly diagnose Plaintiff's condition as arthritis. As discussed above, such a showing is not legally sufficient to support a finding of deliberate indifference.

Plaintiff's other new allegation, that during a consult with a urologist on March 8, 2007, regarding his testicular pain, the urologist recommended that Plaintiff consult with a neurologist, also fails to present any issue of material fact on Plaintiff's claim of deliberate indifference. The court first notes that Plaintiff is now incarcerated in LCI and this particular visit did not involve any of the Defendants. This allegation's relevance to Plaintiff's § 1983 claim is therefore limited to its propensity to show that Bearden, and other TRCI officials by extension, acted inappropriately when they refused to schedule an appointment with a neurologist for him despite the fact that a urologist had mentioned the possibility that Plaintiff's ailment may be nerve-based. The record shows that Bearden was aware of the urologist's recommendation, but ultimately decided it was unnecessary. (Defs.' Ex. A at 009-010.) But this fact, when coupled with the fact that Bearden, Smalley, and others continued to see Plaintiff and provide him with medicine for his pain in the brief period (December 29, 2005-February 6, 2006) between when the urologist mentioned Plaintiff might seek the opinion of a neurologist and when Plaintiff was transferred to LCI, can only support a showing of negligence or malpractice, not deliberate indifference.

When a motion to amend a complaint asserts additional allegations that present no issue of material fact as to a plaintiff's claim of deliberate indifference, such a motion is futile, and denial of such a motion is proper under Fed. R. Civ. P. 15. *See, e.g., Burge v. Stalder*, 54 Fed. Appx. 793

(5th Cir. 2002) (holding that where *pro se* inmate plaintiff had received regular medical care but had been denied approval to see a liver specialist, and filed a motion to amend asserting further denials of approval to see a liver specialist, the district court's denial of the motion to amend was proper); *Lagos-M v. Loranth*, 2007 WL 2105327 (D.S.C. 2007) (denying *pro se* inmate plaintiff's motion to amend where new factual allegations would only support a finding of negligence, not deliberate indifference, on part of prison physician); *Black v. Burtt*, 2006 WL 1074912 (D.S.C. 2006) (denying *pro se* inmate plaintiff's motion to amend to include allegations that he was denied a certain prescription, where denial of said prescription was the result of a medical decision by doctor and thus could only support a finding of negligence, not deliberate indifference).

Plaintiff's allegations in his Motion to Amend, even when viewed by the court in the most favorable possible light, present no issue of material fact as to whether Defendants exhibited deliberate indifference to Plaintiff's serious medical need in violation of the rights guaranteed to him by the Eighth Amendment. Accordingly, the court finds that the Magistrate Judge correctly recommended that Plaintiff's motion to amend be denied.

## **CONCLUSION**

For the foregoing reasons the court adopts in full the recommendation of the Magistrate Judge and **ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion to Amend Complaint is **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**October 9, 2007.**